JAMES MADISON WATSON

*v.*

ROSA VERTUER JEFFREY et al.

Complainants and those under whom they claimed had had fifty years' open, notorious and continuous possession of lands, under duly recorded deeds purporting to convey the entire estate therein.—*Held,* that their title was valid, as against one claiming under the former owner of an undivided interest.

Bills to quiet title. On final hearing on pleadings and proofs.

*Mr. W. P. Wilson,* for complainant.

*Mr. W. C. Spencer,* for answering defendants.

THE CHANCELLOR.

These bills are filed under the act "to compel the determination of claims to real estate in certain cases, and to quiet the title to the same." *Rev. p. 1189.* The premises in question are a tract of about sixty-four and a half acres, in the city of Elizabeth. They were conveyed to James Madison Watson and Inslee A. Hopper (now deceased) by George Peabody Wetmore and wife, August 14th, 1871. Messrs. Watson and Hopper, with their wives, conveyed an undivided third of the property to William V. V. Lidgerwood, March 5th, 1873; and afterwards, but on the same day, Messrs. Hopper and Lidgerwood and their wives conveyed to Mr. Watson all their interest in part thereof, a lot of one hundred feet in width by two hundred

and fifty feet in length.    To clear the title of that lot, the first
suit above stated is brought, and to remove the same cloud from
the title of the rest of the property the other suit was instituted.
The cases were heard together.    George Peabody Wetmore de-
rived his title to the property under the will of his brother,
William S. Wetmore, deceased, dated October 21st, 1861, proved
in New York, June 28th, 1862, and recorded in the surrogate's
office of Union county, in this state, September 6th, 1862.    The
property was conveyed to William S. Wetmore, by Ralph H.
Isham and wife, November 26th, 1855, by deed recorded April
12th, 1856.    Isham obtained title by two deeds dated June 1st,
1855, and recorded April 12th, 1856, one from the children of
Oliver Pierce, deceased, and the husband of a deceased daughter
of his, and the other from the special guardian (in this court) of
the infant child of that daughter.    Pierce, who owned the prop-
erty from about 1830 to the time of his death, appears to have
had for his documentary title three deeds, one from David
Austin, executor &c. of Moses Austin, deceased (Pierce's father-
in-law), dated April 1st, 1830 ; another, a release of dower from
the widow of Moses Austin, deceased, dated July 16th, 1834,
both recorded January 29th, 1835, and the third, a deed from
William B. Bend and wife to him for a lot of three and a half
acres of land, dated July 7th, 1844, and recorded July 18th,
1851.    Pierce and those claiming under him have had posses-
sion of the whole of the property for over fifty years.

The title set up in the answer is to an equal undivided one-
eighth part of the tract of about three and a half acres just men-
tioned, which is part of the before-mentioned tract of sixty-four
and a half acres.    The title of the complainant in all respects,
except as to the claim of the answering defendants, is admitted
to be good.    The lot owned by the complainant, Watson, in
severalty is part of the-three-and-a-half-acre tract.    In the suit
by Watson alone, the answering defendants claim an undivided
eighth part of the lot which he claims to own in severalty, and
in the other suit they claim an undivided eighth part of all of
the lot of three and a half acres, except that part of it which is
claimed by him in severalty, which, as just stated, is the subject

of his suit. They claim that Cornelius J. Hetfield very many years ago died seized of the tract of three and a half acres, and that on his death it descended to his two sisters Abby and Mary: that on the death of Abby, under whom those defendants claim title, her half descended to her children, John T. Griffith, Susan, wife of Richard S. Cox, William B. Griffith and Mary Preto y Neto. Richard S. Cox and his two daughters (his wife was then dead), with the husband of that one of them who was married, Mary Preto y Neto and her husband and John J. Griffith executed and delivered a deed, dated August, 1843, and recorded in July, 1844, to William B. Bend, purporting to convey the property in entirety to him in fee, and he executed and delivered a deed for it, as before mentioned, to Pierce. The answering defendants claim under William B. Griffith, who did not join in the deed to Bend. Bend, at the date of his conveyance to Pierce, appears to have had a power of attorney (sealed with a scroll seal, and not duly acknowledged, and never recorded), from the guardian of the person and estate of William E. T. Griffith, the infant son of William B. Griffith (who had died leaving but that one child surviving), which purported to authorize him to release that interest. It is possible that he supposed that he was authorized to convey the interest, and intended to do so accordingly by the deed to Pierce. But that is a matter of no importance in the decision of this controversy. It may, however, be remarked in passing, that for various obvious reasons no valid power to convey the infant's land was given by that instrument. William E. T. Griffith died in 1851 or 1852 or 1853, over thirty years ago, and as before stated, Pierce and those claiming under him have had possession of the property as owners under claim of ownership for over fifty years. Mr. Spinning testifies that Pierce bought the property about 1830, and that from the time he purchased it to the time of his death, he had possession of it continuously. He says he has known the property since 1830, and it has been fenced in ever since that time. He further says that he knew the premises for a year or two before 1830, and they were fenced in even then. Mr. Fay testifies that he has known the property

since 1845, and that it was in possession of Pierce, who, either himself or by his tenants, cultivated it as a farm. The proof is plenary, and there is no attempt to gainsay it, that Pierce and those claiming under him have, for about half a century, had open and notorious possession of the whole of the property under claim of full ownership. On the other hand, there is no proof that any of those under whom the answering defendants claim, ever at any time had any possession of the premises or any part thereof.

It is urged, however, that Pierce, by the conveyance from Bend to him, became a tenant in common with William E. T. Griffith. But the deed to Bend from Coxe and others purported to convey not an interest or interests less than the whole, but the whole of the tract in entirety. Bend, by his deed to Pierce in June, 1844, also conveyed the whole of the tract in entirety, and did it by deed with covenants against encumbrances or limitation of right to convey, covenant of ownership and covenant of warranty-general. The deed to Bend was recorded in 1844, and that from him to Pierce in July, 1851, over thirty years ago. These conveyances, especially the latter, were an assertion of sole ownership of the property in entirety by the grantors, who thereby assumed so to convey it, and the recording of the deeds was notice to all concerned of such claim of ownership. Entry by Pierce under those deeds was evincive of his intention to claim the whole to the exclusion of the other co-tenant, and the deeds having been duly recorded, the transaction acquired the notoriety of livery of seizin, and was a disseizin of such co-tenant; and Pierce and those claiming under him having held possession continuously for the period of twenty years by open and notorious acts of ownership without any interference on the part of such co-tenant or anyone claiming under him, title by adverse possession was acquired. *Foulke* v. *Bond, 12 Vr. 527*. William E. T. Griffith appears, but not by any direct or competent proof, to have been an infant at the date of the deed from Bend to Pierce. When he became of age does not appear. But he died, as before stated, in 1851 or 1852 or 1853, more than twenty (about thirty) years before the commencement of

this suit. It will be decreed that the defendants have not, nor has any of them, any estate, right, title or interest in or to the complainants' land to clear the title to which the suits are brought, or any part of it, and that the complainants' title, so far as relates to any claim to any estate, right, title or interest on the part of the defendants, or any of them, be settled and established. It will also be decreed that the answering defendants pay the costs of this suit.